[Cite as *State v. Grable*, 2019-Ohio-4516.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-A-0042** |
| TIMOTHY J. GRABLE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2018 CR 00307.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*R. Tadd Pinkston,* The Law Office of R. Tadd Pinkston LLC, 441 West Bagley Road, #283, Berea, OH 44017 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Timothy J. Grable, appeals from the judgment of the Ashtabula County Court of Common Pleas, convicting him on one count of assault, a felony of the fourth degree. We affirm.

{¶2} In January 2018, Amanda Edwards and appellant were employed by Leeda Northeast, a company whose employees assist developmentally and functionally disabled clients with daily tasks and living routines. On January 21, each was assigned

to work at the residence of K.S. and C.S., two developmentally disabled brothers. K.S. is severely autistic with a limited vocabulary, behavioral issues, and problems with aggression.

{¶3} Both appellant and Ms. Edwards received crisis intervention training through Leeda Northeast. Such training enables an employee to de-escalate an agitated individual as well as control or relax situations if a physical altercation occurs. If a client becomes agitated, according to protocol, employees are trained to step away and not engage the individual.

{¶4} On the date of the incident, K.S. wanted to take a nap on his couch after lunch. Due to incontinence issues, employees placed a disposable pad underneath K.S. when he slept. When Ms. Edwards approached K.S. with the pad, he declined, yelling "no" and turning around and covering his head. Ms. Edwards walked away from K.S. and sat on a nearby chair. Subsequently, according to Ms. Edwards, appellant approached K.S., stating "oh we're not doing this today." Appellant began poking at K.S. with one knuckle (approximately eight times) and authoritatively instructing him to get up. Appellant pulled K.S.' blanket down and K.S. pulled it back. This happened several times at which point appellant pulled the blanket completely off and tossed it onto the floor. In response, K.S. sat up and kicked appellant in the groin.

{¶5} According to Ms. Edwards, after being kicked, appellant yelled at K.S. and struck him several times with an open hand on K.S.' arms and legs. She next observed appellant grab K.S. by his ankles and pull him from the couch. She stated appellant then pushed K.S.' legs up against his chest and pressed his body weight against the man, still yelling and striking K.S. with an open hand on his upper arm and legs. Ms.

Edwards asserted the struggle came to an end when appellant grabbed K.S. by his ankles and "dragged" him into his bedroom. After finishing her shift, Ms. Edwards reported what she witnessed to her supervisor. Appellant was ultimately placed on administrative leave and eventually fired.

{¶6} Appellant agreed that he approached K.S. after refusing the pad from Ms. Edwards. He also conceded he used his knuckle to "nudge" K.S. and pulled the blanket down from the man several times, and eventually pulled the blanket entirely off. He stated he might have been speaking authoritatively with K.S., but was not yelling at the man. And, after being kicked in the groin, appellant maintained he fell back and simultaneously grabbed K.S.' legs, which pulled him onto the floor. While on the floor, appellant stated K.S. commenced kicking him in the ribs and, as a result, appellant placed his body atop K.S.' to control him. Appellant asserted he then pulled K.S. up, under his arms, and pulled him into his bedroom to de-escalate. Appellant stated he was aware that K.S. had been physically aggressive in the past, but he had no intention to physically harm K.S. during the incident.

{¶7} Appellant was indicted on one count of assault, in violation of R.C. 2903.13(A)(C)(2), a felony of the fourth degree and one count of assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree. Appellant pleaded not guilty and the matter proceeded to a jury trial. Appellant was later found guilty on both counts of assault. The trial court found the counts merged for purposes of sentencing and the state elected to proceed on the felony-assault count. Appellant was sentenced to a two-year term of community control. This appeal follows.

{¶8} Appellant asserts five assignments of error for our review. His first, assignment of error provides:

{¶9} "Mr. Grable's constitutional rights to due process and fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution were prejudiced by the ineffective assistance of trial counsel."

{¶10} The test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), is the proper standard to apply in assessing whether a defendant has raised a genuine issue as to the ineffectiveness of counsel. To prevail on an ineffective assistance of counsel claim, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389 (2000), citing *Strickland* at 687-688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's performance was reasonable considering all the circumstances." *Strickland* at 688. "There is a strong presumption that the attorney's performance was reasonable." *State v. Gotel*, 11th Dist. Lake No. 2006-L-015, 2007-Ohio-888, ¶10.

{¶11} Appellant contends trial counsel's assistance was ineffective due to her failure to request a self-defense jury instruction and her failure to object to alleged prejudicial statements made during the prosecutor's closing argument. We shall address the jury-instruction issue first.

4

{¶12} Self-defense is an affirmative defense in Ohio. *State v. Jackson*, 22 Ohio St.3d 281, 283 (1986). Self-defense is not merely a denial or contradiction of evidence offered by the state to prove the essential elements of the crime charged, but rather is the admission of prohibited conduct coupled with claims that surrounding facts or circumstances justify the conduct. *See State v. Grubb*, 111 Ohio App.3d 277, 282 (2d Dist.1996). The elements of self-defense differ based upon the level of force used, i.e., the use of deadly force in self-defense triggers different elements than the use of non-deadly force. *See State v. Morris,* 7th Dist. No. 03 MO 12, 2004-Ohio-6810, ¶21. In a non-deadly force case, there is no duty to retreat. *State v. Johnson*, 11th Dist. Lake No. 2005-L-103, 2006-Ohio-2380, ¶21. The instant matter is a case of non-deadly force and, as a result, the elements of self-defense are as follows: (1) the defendant was not at fault in creating the situation giving rise to the affray, and (2) the defendant had a bona fide belief that he was in imminent danger of bodily harm. *Id.*

{¶13} The evidence demonstrated that K.S. has erratic behavioral patterns which include physical aggression if he is agitated. K.S. declined the placement of the pad onto the couch on which he was laying. The crisis intervention training, in which both Ms. Edwards and appellant participated, stressed stepping away from and not engaging an individual who is aggressive. Moreover, the protocol emphasized to avoid agitating such an individual. Ms. Edwards' testimony demonstrated appellant poked at K.S., pulled at his blanket, and ultimately removed the same prior to K.S. kicking appellant. Appellant confirmed that he used his knuckle to push on K.S. to "nudge" him into cooperation. And perhaps most telling, appellant was asked on cross examination: "the entirety of your actions that particular afternoon of forcing [K.S.] to get his pad

5

underneath him set the whole chain of events into play, did it not?" Appellant responded, "Yes, it is."

{¶14} In light of the following evidence, appellant could not establish he was not at fault in creating the situation that caused the physical altercation. To the contrary, he admitted he triggered the affray. Counsel therefore did not act unreasonably in failing to seek a self-defense instruction.

{¶15} Next, appellant argues his counsel was ineffective for failing to object to the following statements during the state's closing: (1) "Again, I come up and start slapping you, is that still going to feed the aggravation? The aggression?" (2) "Yell at you, poke you, rub my knuckle on you. I'm going to force you to comply * * *." And (3) And the state feels strongly that [appellant] is guilty."

{¶16} Considerable latitude is permitted in closing arguments. *State v. Mauer*, 15 Ohio St.3d 239, 269 (1984). The prosecution, however, must avoid insinuations and assertions which are calculated to mislead the jury. *Berger v. United States*, 295 U.S. 78, 120 (1935). The prosecution also may not express a personal belief or opinion on the credibility of a witness or the guilt of the accused. *State v. Thayer*, 124 Ohio St. 1, (1931). The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984); *State v. Lott*, 51 Ohio St.3d 160, 165 (1990).

{¶17} The first two statements addressed appellant's actions toward K.S. Ms. Edwards testified to observing appellant's conduct and thus these statements were supported by the evidence and proper. The third statement is not a full quote by the

6

prosecutor. In his closing, the prosecutor stated: "The state feels strongly that [appellant] is guilty, and the state has proven beyond a reasonable doubt, based on his conduct, that he is guilty of knowingly committing physical harm to a functionally impaired person, to [K.S.]" Although the prosecutor improperly expressed his opinion of appellant's guilt, it followed the comment with an expression that it met its burdens of production and persuasion based upon evidence of appellant's conduct. In light of the evidence, we cannot conclude the prosecutor's improper statement prejudicially affected appellant's substantial rights such that he was denied due process.

{¶18} Appellant's first assignment of error lacks merit.

{¶19} Appellant's second and third assignments of error provide:

{¶20} "[2.] The trial court committed plain error when it failed to read a self-defense instruction to the jury.

{¶21} "[3.] The trial court committed plain error when it allowed the improper statements of the prosecution at closing."

{¶22} In light of our analyses and conclusions under appellant's first assignment of error, concluding no prejudicial error occurred in the course of counsel's representation, we hold the foregoing assigned errors are overruled as moot.

{¶23} Appellant's fourth assignment of error provides:

{¶24} "The trial court erred to the prejudice of Mr. Grable when it returned a verdict of guilty against the manifest weight of the evidence."

{¶25} A court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly

7

lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee,* 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994).

{¶26} Appellant was convicted of assault, in violation of R.C. 2903.13(A)(C)(2), which provides: "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn. * * * if the offense is committed by a caretaker against a functionally impaired person under the caretaker's care, assault is a felony of the fourth degree." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Physical harm is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶27} Here, Ms. Edwards testified, after he was struck in the groin, appellant proceeded to strike K.S. with an open hand on his arms or legs; pull K.S. from the couch by his ankles; prop K.S.' legs against his chest, then press his body weight against him; and finally drag K.S. to his bedroom by his ankles. According to Officer Chistopher Defina, of the Ashtabula City Police Department, K.S. sustained abrasions to his middle finger and the back of his neck.

{¶28} Furthermore, the evidence demonstrated K.S. is severely autistic and was under the constant care of Leeda Northeast at the time of the incident. Ms. Edwards testified that Leeda employees assist K.S. and his brother with "chores, meal preparation, passing medication to them, making sure they had a clean home. Taking

8

them to the store, taking them to Special Olympic activities." Ms. Edwards stated Leeda employees assist K.S. with all his basic needs.

{¶29} Given the foregoing, we conclude the jury did not lose its way in concluding that appellant knowingly caused physical harm to K.S., a functionally impaired person.

{¶30} Appellant's fourth assignment of error is without merit.

{¶31} Appellant's fifth assignment of error asserts:

{¶32} "The trial court deprived Mr. Grable of his constitutional right to a fair trial under the doctrine of cumulative error."

{¶33} Although the prosecutor's comment regarding appellant's guilt in closing was improper, we concluded it was not prejudicial. Because we discern no additional errors, the doctrine of cumulative error is inapplicable.

{¶34} Appellant's fifth assignment of error is without merit.

{¶35} For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, J.,

MATT LYNCH, J.,

concur.