[Cite as *State v. Thompson*, 2025-Ohio-4508.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-01-006 |
| | : | OPINION AND |
| - vs - | | JUDGMENT ENTRY |
| | : | 9/29/2025 |
| MICHAEL L. THOMPSON, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY AREA II COURT
Case No. 23CRB00947


Michael T. Gmoser, Butler County Prosecuting Attorney, and Willa Concannon, Assistant Prosecuting Attorney, for appellee.

Neal D. Schuett, for appellant.


## O P I N I O N


**M. POWELL, J.**

{¶ 1}  Appellant, Michael Thompson, appeals his conviction in the Butler County Area II Court for aggravated menacing.

{¶ 2}   Appellant was charged with aggravated menacing following a September 30, 2023 verbal altercation between appellant and Joseph Botkins during which appellant pointed a handgun in the direction of Botkins. The matter proceeded to a bench trial on October 8, 2024. Botkins and Fairfield Township Police Officer Trenton Smith testified on behalf of the State. Appellant testified on his own behalf.

{¶ 3}   At the time of the incident, Botkins was renting a home from appellant on Canal Road. The portion of the road where Botkins lives is a one-lane, gravel/dirt road. There is a Kentucky Board fence in front of the home. The fence runs parallel to Canal Road, ends into a grove, and is almost five feet tall.

{¶ 4}   On September 30, 2023, appellant and Botkins engaged in a verbal dispute about the disappearance of a feral cat that appellant feeds. Appellant believed that Botkins had poisoned the cat. Appellant called 9-1-1, and Officer Smith responded. The officer first spoke with appellant near the intersection of Canal Road and Headgates Road, and then spoke with Botkins at Botkins' home. Thereafter, Officer Smith repeatedly told appellant not to interact with Botkins. Appellant told the officer he carried a firearm for protection because he was concerned about Botkins, and that he intended to drive to the end of Canal Road to feed the cats. Officer Smith then left the scene.

{¶ 5}   Five minutes later, Botkins called police to report that appellant had pointed a handgun at him. Officer Smith returned to the scene and located appellant and his vehicle at the end of Botkins' property line, near the grove. Both appellant and Botkins confirmed that their dispute continued after the officer had left the scene, that appellant was driving on Canal Road along Botkins' fence, and that appellant had pointed his handgun toward Botkins when Botkins approached the fence. Appellant told the officer he pointed his handgun toward Botkins because he feared Botkins may have weapons even though he had never seen Botkins with a weapon or had any indication that Botkins

had weapons.

{¶ 6} Appellant and Botkins presented two different versions of the handgun incident. Botkins testified he was cleaning his truck in his driveway when appellant pulled up, driving slowly in front of Botkins' home. Botkins cussed at appellant and the two engaged in a heated screaming argument. During the altercation, appellant remained in his vehicle driving on Canal Road, Botkins was on his property about six feet behind his fence, and the two men were approximately 15-20 feet apart and separated by the fence. Botkins began walking parallel to his fence in the direction appellant was driving when appellant then stopped his vehicle and pointed a handgun out the window at Botkins' face. Botkins stated that he thought he was about to get shot. Botkins denied approaching appellant's vehicle and stated that he and appellant were both moving parallel during the altercation.

{¶ 7} Appellant testified he was driving on Canal Road in front of Botkins' house when the latter started cussing at him. Appellant did not engage then, kept his window rolled up, turned the radio up, and continued driving. However, as appellant continued driving, Botkins started walking parallel to the fence and then hopped on the fence. Botkins was "two, three feet, elevated above my head" and "was ready to come over." Fearing for his safety, appellant pointed his handgun in Botkins' direction and stated, "One more step. Don't do it." On cross-examination, appellant acknowledged that he was in his car with the engine running at all times, that he was separated from Botkins by the fence, and that he could have continued driving on Canal Road instead of pointing his handgun at Botkins. Although appellant could not recall whether he had informed the police that Botkins was on the fence, he again testified that Botkins was on the top of the fence which prompted him to point his handgun in Botkins' direction.

{¶ 8} Following the parties' closing arguments, the trial court found appellant

guilty of aggravated menacing.

{¶ 9} Appellant now appeals, raising six assignments of error. This appeal involves appellant's self-defense claim.

{¶ 10} Pursuant to Ohio's self-defense statute, R.C. 2901.05, when an accused presents evidence that tends to support that the accused used force in self-defense, the State has the burden of proving beyond a reasonable doubt that the accused did not act in self-defense. R.C. 2901.05(B)(1). To satisfy its burden, the State only has to disprove one of the elements of self-defense beyond a reasonable doubt. *State v. McFarland*, 2022-Ohio-2326, ¶ 43 (12th Dist.).

{¶ 11} In a case involving use of nondeadly force, an accused is justified in using force against another if (1) he was not at fault in creating the situation giving rise to the altercation and (2) he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from the danger was by the use of force not likely to cause death or great bodily harm. *State v. Clemmons*, 2020-Ohio-5394, ¶ 22 (12th Dist.).[1] In cases involving the use of nondeadly force, there is no duty to retreat or avoid the danger, even if such retreat is possible. *Id.* at ¶ 22, fn. 4; *State v. Cunningham*, 2024-Ohio-888, ¶ 31 (11th Dist.).

{¶ 12} "Following a recent amendment to R.C. 2901.09(B), 'a person has no duty to retreat before using force in self-defense . . . if that person is in a place in which the

---

1. Conversely, it has long been established that in cases involving use of *deadly* force, the elements of a valid claim of self-defense are as follows: (1) the accused was not at fault in creating the situation giving rise to the affray; (2) the accused had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of such force; and (3) the accused did not violate any duty to retreat or avoid the danger. *State v. Clemmons*, 2020-Ohio-5394, ¶ 22, fn. 4 (12th Dist.), citing *State v. Barnes*, 2002-Ohio-68, ¶ 11, and *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus.

person lawfully has a right to be." *State v. Palmer*, 2024-Ohio-539, ¶ 23. In addition, "[a] trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense, defense of another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety." R.C. 2901.09(C). Amended R.C. 2901.09 does not distinguish between use of deadly force and use of nondeadly force, and simply refers to use of force. R.C. 2901.09 therefore applies here.

{¶ 13} With these standards in mind, we address appellant's assignments of error.

{¶ 14} Assignment of Error No. 1:

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY ADMITTING INADMISSIBLE FAILURE TO RETREAT EVIDENCE.

{¶ 15} Appellant argues that the trial court erred to his prejudice by improperly admitting evidence of the possibility of retreat in a self-defense case in violation of R.C. 2901.09(C). During the testimony of Officer Smith and Botkins, the State asked each witness whether appellant could have kept driving on Canal Road instead of stopping his vehicle in front of Botkins' house and pointing his handgun at Botkins. Appellant's trial counsel objected both times. The trial court overruled the objections and allowed the witnesses to answer.

{¶ 16} We find the trial court committed no error. As we recently observed, while a person no longer has a duty to retreat from a place he or she is lawfully permitted to be, the plain language of R.C. 2901.09(B) "does not negate the remaining elements of self-defense" and "does not serve as a stand-alone right to use force absent other elements of self-defense." *State v. James*, 2024-Ohio-621, ¶ 38 (12th Dist.). Concerning R.C. 2901.09(C), the Eighth District Court of Appeals held that while there is no longer a duty to retreat before one uses force in self-defense, "there is no language in the amended

statute to suggest a trier of fact is precluded from considering whether the defendant was the initial aggressor or whether the defendant attempted to withdraw from the situation when determining whether the defendant was at fault in creating the situation giving rise to the affray." *State v. Hughkeith*, 2023-Ohio-1217, ¶ 88 (8th Dist.). "The narrow language of the amended statute does not place on triers of fact express restrictions on consideration of fault." *Id.*

{¶ 17} The admission of the testimony that appellant failed to continue to drive past Botkins' home did not offend R.C. 2901.09(C) because its purpose was not to establish a possibility of retreat. On the contrary, instead of going about his business and continuing to drive to the end of the road to feed the cats, appellant stopped his car in front of Botkins' home and re-engaged in his dispute with Botkins. There was uncontroverted evidence, including appellant's own testimony, that it was not necessary for appellant to do so. Indeed, appellant's conduct was the opposite of retreat. As noted by the First District Court of Appeals, "[t]here is a marked difference between a duty to retreat and the conscious choice to arm yourself and seek out a perceived threat." *State v. Donovan*, 2025-Ohio-1476, ¶ 19 (1st Dist.).

{¶ 18} There will be cases like this where there is ambiguity whether evidence relates to the possibility of retreat. R.C. 2901.09(C) addresses this problem by prohibiting the trier of fact from considering the evidence for that purpose. In this sense, the statute restricts the use of the evidence, not its admissibility. "The statute only prohibits fact finders from considering evidence involving the possibility of retreat to determine whether the defendant's belief that force was necessary was reasonable." *State v. Warth*, 2023-Ohio-3641, ¶ 31 (1st Dist.). There is no indication that the trial court, as the trier of fact, improperly considered the evidence as showing that appellant did not reasonably believe that his show of force was necessary because of the possibility of retreat.

{¶ 19} The trial court, therefore, did not err in allowing Officer Smith and Botkins to answer whether appellant could have kept driving down Canal Road instead of stopping and pointing his handgun toward Botkins.

{¶ 20} Appellant's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

MR. THOMPSON'S CONVICTION FOR AGGRAVATED MENACING WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 22} Appellant argues that his conviction for aggravated menacing is not supported by sufficient evidence because the State (1) failed to present sufficient evidence of all the elements of aggravated menacing, and (2) failed to prove beyond a reasonable doubt that he did not act in self-defense.

{¶ 23} Appellant was convicted of aggravated menacing in violation of R.C. 2903.21(A), which provides in pertinent part, "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

{¶ 24} We note that appellant provides no specific analysis regarding his assertion there was insufficient evidence to support each element of aggravated menacing. Instead, appellant offers only a bare conclusion that the State failed to prove aggravated menacing because he did not point his handgun at Botkins. As we have consistently held, it is an appellant's burden to demonstrate error on appeal by presenting an argument supported by citations to legal authority and facts in the record. *State v. Hopkins*, 2025-Ohio-2102, ¶ 30 (12th Dist.), citing App.R. 16(A)(7). It is not this court's duty to "root out" or develop an argument that can support an assigned error, even if one exists. *State v. Phipps*, 2024-Ohio-4832, ¶ 13 (12th Dist.). Accordingly, because appellant did not properly develop the

issue within his brief, and because we decline to create an issue that was not otherwise argued, appellant's first issue for review lacks merit.

{¶ 25} As for appellant's second issue for review, this court has routinely held that, because self-defense is an affirmative defense, it is not considered in a sufficiency of the evidence analysis. *State v. Ballein*, 2022-Ohio-2331, ¶ 32 (12th Dist.), citing *State v. Debord*, 2020-Ohio-57, ¶ 36 (12th Dist.); *State v. Inabnitt*, 2022-Ohio-53, ¶ 45 (12th Dist.); and *State v. Green*, 2018-Ohio-3991, ¶ 28 (12th Dist.) (decided prior to the amendment of R.C. 2901.05). This is because "[a]n affirmative defense does not negate the legal adequacy of the state's proof for purposes of submitting it to the jury." *Ballein* at ¶ 32. Rather, "an affirmative defense involves an excuse or justification for doing an otherwise illegal act. It does not deny the existence of the act; it simply provides a legal justification for it." *Id.* Thus, "once the State has submitted sufficient evidence to allow a factfinder to convict, then the question of the relative persuasiveness of the defendant's affirmative defense is a factfinding determination that is reviewed by an appellate court on a manifest weight of the evidence standard." *Id.*

{¶ 26} Appellant's second assignment of error is overruled.

{¶ 27} Assignment of Error No. 3:

> MR. THOMPSON'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 28} Appellant argues that his conviction for aggravated menacing is against the manifest weight of the evidence. Specifically, appellant asserts that in light of his testimony that "Botkins yelled at him and aggressively came towards his vehicle," the trial court lost its way and created a miscarriage of justice when it rejected appellant's self-defense claim. Appellant also suggests that the trial court improperly considered his failure to retreat in violation of R.C. 2901.09(C).

{¶ 29} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *Clemmons*, 2020-Ohio-5394, at ¶ 15 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

{¶ 30} Questions regarding witness credibility and weight of the evidence are primarily matters for the trier of fact to decide because the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence. *Id.* at ¶ 16. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.; State v. Thompkins*, 1997-Ohio-52, ¶ 25.

{¶ 31} After thoroughly reviewing the record, we find that the trial court did not lose its way and create a manifest miscarriage of justice in finding appellant guilty of aggravated menacing. As stated above, one claiming self-defense must not be at fault for creating the situation giving rise to the affray. *Clemmons*, 2020-Ohio-5394, at ¶ 23 (12th Dist.). This concept is broader than simply not being the immediate aggressor. *State v. Elam*, 2022-Ohio-1895, ¶ 14 (12th Dist.). A person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense. *Id.*

{¶ 32} Contrary to appellant's assertion, the greater amount of credible evidence offered at trial established beyond a reasonable doubt that appellant created the situation that led to the handgun altercation or voluntarily entered the encounter with Botkins. Within minutes of the parties' first verbal altercation for which appellant called the police,

and despite Officer Smith having repeatedly told appellant not to interact with Botkins, appellant deliberately drove down Canal Road, slowly drove along Botkins' fence, and after the parties resumed their heated dispute, pointed a handgun in Botkins' direction. Appellant knew that the cats he wanted to feed were at the end of Canal Road, thus past Botkins' home, and could not assume that Botkins would be inside his home. Thus, instead of avoiding Botkins, appellant willingly advanced toward a volatile situation and stopped his car in front of Botkins' home. Ohio courts have long recognized that a defendant is at fault in creating the situation giving rise to the affray when the defendant chooses to confront the victim or knowingly go to a place where the victim will be, even when the defendant's action was otherwise completely lawful. *Id.* at ¶ 15.

{¶ 33} The trial court was presented with conflicting versions of events by appellant and Botkins. However, as the trier of fact, the trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations to judge the credibility of witnesses and the weight to be given the evidence. *Clemmons*, 2020-Ohio-5394, at ¶ 24 (12th Dist.). While conflicting evidence was presented at trial, appellant's conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony and evidence presented by the State. *Id.*

{¶ 34} Appellant's suggestion that the trial court improperly considered his failure to retreat in violation of R.C. 2901.09(C) is purely speculative and not supported by the record. In finding appellant guilty of aggravated menacing, the trial court simply stated, "I listened to the testimony of the witnesses, and I've looked at the statute also. I believe the State has met its burden of proof beyond a reasonable doubt, that Mr. Thompson committed the offense of aggravated menacing." It is well established that a trial judge is presumed to know the law and apply it accordingly unless the record shows the contrary.

*State v. Myers*, 2011-Ohio-2470, ¶ 5 (12th Dist.); *State v. Eley*, 1996-Ohio-323, ¶ 35-36.

Appellant has failed to point to any evidence that overcomes this presumption. *Id.*

{¶ 35} Accordingly, as the State proved beyond a reasonable doubt that appellant created the situation giving rise to the handgun altercation and knowingly caused Botkins to believe that appellant would cause him serious physical harm, we find that appellant's conviction for aggravated menacing is not against the manifest weight of the evidence.

{¶ 36} Appellant's third assignment of error is overruled.

{¶ 37} Assignment of Error No. 4:

THE ASSISTANT PROSECUTOR'S MISCONDUCT DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL.

{¶ 38} Appellant argues that the State engaged in prosecutorial misconduct that denied him a fundamentally fair trial when the State consistently solicited "impermissible failure to retreat testimony" during the testimony of all three witnesses, and then "impermissibly averred during closing arguments that [appellant] was guilty of aggravated menacing because he failed to retreat."

{¶ 39} For a conviction to be reversed on the basis of prosecutorial misconduct, a defendant must prove that the prosecutor's acts were improper and that they prejudicially affected the defendant's substantial rights. *State v. Warnock*, 2024-Ohio-382, ¶ 30 (12th Dist.). To demonstrate prejudice, a defendant must show that the improper remarks or questions were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred. *Id.* The focus of "an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon culpability of the prosecutor." *Id.* at ¶ 31. Thus, prosecutorial misconduct "is not grounds for error unless the defendant has been denied a fair trial." *Id.*

{¶ 40} For the reasons discussed in the first assignment of error, the State did not

engage in prosecutorial misconduct when it elicited testimony and argued in closing arguments regarding appellant's failure to retreat. *Warth*, 2023-Ohio-3641, at ¶ 60-61 (1st Dist.). Appellant's conviction for aggravated menacing was not based upon prosecutorial misconduct, but rather upon ample evidence of guilt. Appellant's was not deprived of a fair trial. *See Warnock.* Appellant's self-defense was simply rejected by the trial court.

{¶ 41} Appellant's fourth assignment of error is overruled.

{¶ 42} Assignment of Error No. 5:

THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO A COUNSEL THROUGH INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 43} Appellant argues that his trial counsel was ineffective because he (1) failed to file a notice of self-defense under Crim.R. 12.2, (2) failed to object when the State asked him whether he could have driven away and subsequently mentioned appellant's ability to do so in its closing arguments, and (3) admitted during closing arguments "that he lacked sufficient knowledge about whether [appellant] could claim self-defense."

{¶ 44} To prevail on his ineffective assistance of counsel, appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a result. *State v. Green*, 2017-Ohio-633, ¶ 39 (12th Dist.); *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694. The failure to make an adequate showing on either prong is fatal to appellant's ineffective assistance of counsel claim. *State v. Haynes,* 2011-Ohio-5743, ¶ 16 (12th Dist.), citing *Strickland* at 697.

{¶ 45} As pertinent here, Crim.R. 12.2 requires a defendant to give written notice of his or her intent to offer evidence or argue self-defense no less than 14 days before

trial in a misdemeanor case. "If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant related to the defense, unless the court determines that in the interest of justice such evidence should be admitted." Crim.R. 12.2. Thus, under the rule, a trial court has discretion to exclude evidence of self-defense if the notice is not filed; exclusion is not mandatory. *State v. Melott*, 2025-Ohio-2444, ¶ 44 (7th Dist.).

{¶ 46} The record plainly shows that despite trial counsel's failure to file the self-defense notice, appellant was not prevented from presenting his self-defense argument. The State did not raise the failure to comply with Crim.R. 12.2 or otherwise object to the self-defense evidence appellant presented. The trial court did not mention the lack of notice or otherwise restrict appellant from presenting evidence of self-defense. Having been able to present his self-defense argument in full, appellant cannot establish that he suffered prejudice by the lack of notice, and his claim of ineffective assistance of counsel on this issue is without merit. *State v. Hawkins*, 2024-Ohio-1253, ¶ 14, 16 (1st Dist.); *State v. Walters*, 2023-Ohio-2701, ¶ 13 (2d Dist.).

{¶ 47} For the reasons discussed in the first and third assignments of error, appellant's failure to keep driving down Canal Road was admissible evidence because its purpose was not to establish a possibility of retreat. Therefore, appellant cannot establish that, but for his trial counsel's failure to object, there is a reasonable probability that the result of his trial would have been different, and his claim of ineffective assistance of counsel on his second issue for review is without merit.

{¶ 48} Regarding appellant's third issue for review, while trial counsel briefly equivocated during closing arguments whether appellant's act of pointing his handgun toward Botkins was "an excusable event," viewing his comment in context makes clear he was arguing self-defense:

[F]rom Mr. Botkins' testimony, he was out by his truck and initiated a verbal argument with Mr. Thompson as he drove by. He also indicated that he followed him down the lane, six to eight feet, for whatever reasons. There was no reason to do that.

Mr. Thompson was in his car, in his motor vehicle. Mr. Botkins attempted to jump the fence. And that's when the incident happened. I believe that Mr. Thompson was in fear for his life. At least in fear of his safety at that point in time when he pulled the gun. I don't know if that's an excusable event at this point in time, but I don't think they proved aggravated menacing beyond a reasonable doubt at this time.

{¶ 49} The foregoing clearly shows that trial counsel argued that Botkins was the initial aggressor, that appellant feared for his safety, and that the State had not disproved self-defense. *State v. Fisher*, 2020-Ohio-670, ¶ 26-27 (8th Dist.), citing *State v. Radecki*, 2010-Ohio-4108, ¶ 6 (8th Dist.). Furthermore, this was a bench trial, and the trial court is presumed to have considered the appropriate defenses in rendering its verdict. *Id.* The record does not indicate or suggest that the trial court did not consider appellant's self-defense claim. Thus, appellant cannot establish that he was prejudiced by his trial counsel's closing arguments, and his claim of ineffective assistance of counsel on his third issue for review is without merit.

{¶ 50} Appellant's fifth assignment of error is overruled.

{¶ 51} Assignment of Error No. 6:

THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL THROUGH CUMULATIVE ERRORS.

{¶ 52} Appellant argues that the cumulative effect of his claimed errors denied him a fair trial. Under the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *Warnock*, 2024-Ohio-382, at ¶ 55 (12th Dist.). Errors that

- 14 -

are separately harmless may, when considered together, violate a person's right to a fair trial. *State v. Madrigal*, 2000-Ohio-448, ¶ 92. However, in order even to consider whether "cumulative" error is present, a reviewing court would first have to find that multiple errors were committed in the case. *Id.* at ¶ 93. Given this court's resolution of appellant's assignments of error above, appellant failed to establish that the trial court committed any single error, let alone multiple errors, which would trigger the application of the cumulative error doctrine to this case. *State v. Nkoyi*, 2024-Ohio-3144, ¶ 48 (12th Dist.). The cumulative error doctrine is therefore inapplicable.

{¶ 53} Appellant's sixth assignment of error is overruled.

{¶ 54} Judgment affirmed.

PIPER, P.J., and SIEBERT, J., concur.

---

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Area II Court for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robin N. Piper, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge